UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 MAR 20 P 4:34
LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| NORTH AMERICAN CAPACITY INSURANCE COMPANY | * * * | CIVIL ACTION |
| VERSUS | * * | NO. 00-0429 |
| BRISTER'S THUNDER KARTS. INC. | * * * * * | SECTION "L", MAG.2<br>JUDGE ELDON E. FALLON<br>MAGISTRATE JOSEPH C. WILKINSON, JR. |

*******************************************************************

AMERICAN DYNASTY'S MEMORANDUM IN OPPOSITION
TO NORTH AMERICAN'S MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Now into court through undersigned counsel comes American Dynasty Surplus Lines Insurance Company (hereinafter American Dynasty) who respectfully submits this memorandum in opposition to North American's Motion for Summary Judgment on the basis that North American knew that the policy at issue was cancelled when plaintiff's Original Petition was filed, but waited three years to deny coverage and accordingly, waived its right to deny coverage.

I.  **North American Knew That The Insured's Policy Was Cancelled Yet Still Provided Coverage And Appointed Counsel For Three Years.**

On May 17, 1996, Heather LeBlanc was injured while riding as a passenger in a go-kart.[1] LeBlanc filed suit against Brister's Thunder Karts.[2]

---

[1] See: Declaratory Judgment filed by North American, par. 8.
[2] Id.

1

Notice of the lawsuit was sent to North American.[3] North American hired counsel to defend the claim.[4] Almost three years later, North American "discovered" it had cancelled the policy on July 29, 1996.[5] North American has offered no evidence that it notified Brister's of its intent to deny coverage until almost three years after notice of the claim was received.[6]

North American knew that Brister's policy was cancelled on July 29, 1996, as evidenced by its return of the Brister's premium. However, **it waited three years to deny coverage**. Thus, because it did not timely deny coverage, it waived its right to do so. Furthermore, North American is estopped from denying coverage because for three years, Brister's relied to its detriment on North American's actions indicating there was coverage. Finally, North American ratified the extension of coverage to Brister's by appointing counsel and providing a defense for three years. For these reasons, the policy provided by North American extends coverage to Brister's and North American's motion for summary judgment should be denied.

II. **An Insurer's Notice Of It's Intent To Avail Itself Of The Defense Of Non-Coverage Must be Timely.**

The duty of an insurer to defend an insured is determined by the facts in the plaintiff's petition, with the insurer being obligated to provide a defense unless the petition unambiguously excludes coverage. *Vargas v. Daniel Battery Manuf. Co.*, 93-2282 (La.App. 1st Cir. 12/29/94), 648 So.2d 1103. When an insured, with knowledge of the facts indicating non-coverage assumes or continues the insured's defense without obtaining a non-waiver agreement, the insurer waives

---

[3] Id. at par. 7.
[4] Id. at par. 8.
[5] Id. at pars. 6, 10.

such policy defense. *Septore v, Masco Construction Company, Inc.*, 93-2062 (La. 8/18/94), 643 So.2d 1213. Furthermore, and especially significant in this case, **the insurer's notice of its intent to avail itself of the defense of non-coverage must be timely.** *Foret v. Terrebone Towing Co., Inc.* 632 So.2d 344 (La.App. 1st Cir. 1993).

### A.    North American Waived Its Defense Of Non-Coverage By Waiting Three Years To Assert It.

Waiver is understood to be the intentional relinquishment of a known existing right. *Ledoux v. Old Republican Life Ins. Co.*, 233 So.2d 731 (La.App. 3rd Cir. 1970). The requirements of waiver are that there is an existing right, knowledge of its existence, and either an actual intention to relinquish or **conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.** *Peavey Co. v. M/V ANPA*, (5th Cir. 1992). North American for three years acted as though coverage extended to the claims against Brister's, and therefore waived its right to deny coverage.

North American erroneously contends that it cannot waive its defense of non-coverage because "waiver cannot be used to extend coverage to a risk not properly within the limits of the policy as written."[7] North American misplaces reliance on *Tate v. Charles Aguillard Inx. & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987), to support its position. In fact, the holding in *Tate* is exactly the opposite of North American's conclusion. In addressing the extension of coverage outside of the limits of the policy, the Court held, "we conclude that the best view is that waiver **may apply** to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power, or

---

[6] See: North American's Motion For Summary Judgment.
[7] See: North American's Motion For Summary Judgment p. 5.

3

privilege, to avoid liability, **even though the effect may bring within coverage risks originally excluded or not covered.**" Id. at 1375.

Clearly, the right of an insurer to deny its duty to defend and indemnify a former insured because of a cancelled policy is not a defense that can be asserted because the risk at issue was not covered by a policy. Therefore, under certain circumstances an insurer can waive its right to deny coverage if it does not act timely. In this case, a three-year delay in denying coverage should be more than sufficient to create waiver. Accordingly, North American waived its right to deny coverage.

This principle was reiterated by the Louisiana Supreme Court again in *Septore v. Masco Construction Company, Inc.*, 93-2062 (La. 8/18/94), 643 So.2d 1213, 1216. In *Steptore*, an insurer provided a defense for its insured for a claim for personal injuries sustained by a worker aboard a barge. Six months after receiving notice of the suit and appointing counsel for the insured, the insurer denied coverage on the grounds that the insurer breached a navigation warranty contained in the policy. At that time, the insurer provided separate counsel for its coverage defense issue.

The Louisiana Supreme Court recognized that the insurer had knowledge of the facts that served as the basis for its denial of coverage to the insurer **at the time the petition was filed.** Still, the insured hired only one attorney and did not send a reservation of rights letter to the insured. The court held that "it is undisputed that the insured did not . . . provide Masco separate counsel in order to avoid a potential conflict of interest." Thus, because the insurer assumed the defense and continued to represent the insured when its own interests were

adverse to the insured, the insurer waived any coverage defense it may have had under the policy. Id. at 1217.[8]

Like in *Septore*, North American is presumed to have been aware of the cancellation notice at the time the petition was filed. However, it waited three years to assert its defense of non-coverage. Additionally, like in *Septore*, North American hired the one attorney, Mary Hamilton, to represent both Brister's and North American's interests.[9] All of these acts are consistent with providing coverage. Thus, this Court should rule like the Supreme Court in *Septore* and *Tate* and hold that North American its right to deny coverage.

### B. Because The Insured Detrimentally Relied On North American's Acts, North American Is Estopped From Denying Coverage.

Equitable estoppel arises where a person by his acts, representations, or admissions, intentionally, or negligently induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts. *Shirley v. Campbell*, 151 So.2d 557 (La.App. 2nd Cir.). Additionally, the doctrine of equitable estoppel is considered in cases involving interpretation of insurance agreements because "strict adherence to the terms . . . could result too harshly against unsophisticated consumers." *MGIC Indem. Corp. v. Central Bank*, 838 F.2nd 1382,1387 (5th Cir. 1988).[10]

North American must be required to know the status of its policies. Its lack of knowledge of its own books should not be an excuse to later deny

---

[8] See also: *Peavey Co. v. M/V ANPA*, 971 F.2d 1168 (5th Cir. 1992)(Holding that an insurer who has sufficient knowledge to deny coverage but fails to do so timely, waives its right to deny coverage).
[9] See Fn. 1.
[10] See also: *Jackson v. State Farm Mut. Auto. Ins. Co.*, 29 So.2d 177 (1946).

coverage. Thus, when North American exhibited no signs that it was denying the claim and when it provided a defense without reservation of rights, Brister's reasonably relied on these actions. North American's actions induced Brister's to rely to its detriment that the policy covered the claim. Therefore, North American is estopped from denying coverage.

An analogous case is *Johnson v. Desselle*, 596 So.2d 261 (La.App. 3rd Cir. 1992). In *Johnson*, an insurer issued a certificate of insurance to a partnership so that the partnership could provide proof of insurance to the government in order to build homes. Upon the dissolution of the partnership, one of the partners, without notifying the other partner, cancelled the insurance contract. After the cancellation, a fire damaged several houses, and several claims were filed under the policy. The insured denied coverage on the basis that the policy was cancelled. The trial court held that notwithstanding the cancellation, coverage extended to the partner. On appeal the insurer argued that it did not have to formally inform the remaining partner of the cancellation because he was not a named insured.

The Court held that the insurer knew that the government and the remaining partner would rely on the certificate of insurance. Furthermore, "this reliance was detrimental." Id. at 265. Like the insured in *Johnson*, Brister's relied on North American's acts of providing coverage and appointing an attorney to defend the claim. Thus, like the insured in *Johnson*, Brister's reliance was detrimental in that had it known that **three years later** North American would deny coverage, it could have taken the appropriate measures to protect its interests.

North American may argue that the insured should have known the claim was not covered since it received notice of the cancellation in July of 1996. However, it is reasonable to conclude that Brister's believed that the claim fell within the terms of the policy since the accident occurred in May of 1996 and the policy was cancelled in July of 1996. Furthermore, when North American initially provided coverage and appointed the same attorney to represent both parties' interests, Brister's belief that the claim was covered was substantiated. Moreover, because an insured relies on the acts of the insurer, it was North America's obligation to deny coverage as soon as it was aware coverage failed to exist, **which was at the time the petition was filed**. Therefore, because North American acted as Brister's insurer for three years while maintaining the knowledge that the contract was cancelled, it is estopped from denying coverage now.

### C. North American Ratified Coverage Over The Insured's Claim.

Ratification of unauthorized acts of an agent occurs when the principal, with full knowledge of the facts, consents to the unauthorized actions and adopts the contract as of it had been previously authorized. See: *Flaherty v. Gulfco Life Insur., Co*, 327 So.2d 436 (La.App. 3rd Cir. 1976). At the time plaintiff's petition was filed, North American was aware that coverage did not exist; however, it elected to appoint the same counsel for both parties and not to deny coverage. In doing so, it ratified coverage over the plaintiff's claims.

In *Flaherty*, the insured purchased an insurance policy from the insurer. The policy, on its face, indicated that it had been written for an excessive amount and term. Instead of correcting the error, the insurer allowed the policy to

7

remain in effect. However, when the insured made a claim on the policy, the insurer denied coverage citing the error as its basis.

The court held that because the insurer had knowledge of the error, its failure to remedy the error constituted a ratification of the act. Similarly, North American had knowledge that the claim was made in August of 1996 and that the policy was cancelled in July of 1996. Nonetheless, it proceeded to provide coverage and a defense for the insured. Thus, like in *Flaherty*, North American's failure to remedy the error constituted a ratification of coverage on the claim.

### III.    Conclusion

An insurer is charged with the knowledge of the contents of its own policy. Additionally, an insurer who has knowledge of a defense of non-coverage but fails to **timely assert it** waives the defense and is estopped from asserting it. North American was aware that it had cancelled the insured's policy yet waited three years to assert the defense. Thus, it waived its defense of non-coverage. Additionally, North American is estopped from denying coverage because for three years it acted as though coverage existed and the insured detrimentally relied on its acts. Finally, because North American knew that coverage did not exist at the time the petition was filed yet did nothing to notify the insured, it ratified coverage over the claim. Accordingly, North American's Motion For Summary Judgment should be dismissed.

Wherefore, Defendants respectfully request that this honorable court deny North Americans motion for summary judgment.

Respectfully submitted,

ADAMS AND REESE LLP

_____
Ralph H. Wall (#22667)
Christopher A. D'Amour (#26252)
4500 One Shell Square
New Orleans, LA 70139
(504) 581-3234

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served upon all counsel of record by placing a copy of same in the U. S. mail, postage prepaid, this __20__ day of March, 2001.

_____
CHRISTOPHER A. D'AMOUR