

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NORTH AMERICAN CAPACITY INSURANCE COMPANY | * * * * | CIVIL ACTION<br><br>NO. 00-0429 |
| VERSUS | * * | SECTION "L", MAG. 2 |
| BRISTER'S THUNDER KARTS, INC. | * * | JUDGE ELDON E. FALLON |
| * * * * * * * * * * * * * * * * * * * | * * * | MAGISTRATE JOSEPH C. WILKINSON, JR. |

### NORTH AMERICAN'S FIRST SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff North American Capacity Insurance Company ("North American"), through undersigned counsel, submits this first supplemental memorandum in support of North American's motion for summary judgment.

**I.   INTRODUCTION**

North American filed a Motion for Summary Judgment, seeking a ruling that North American's "claims made" insurance policy does not provide coverage for a personal injury claim asserted against defendant Brister's Thunder Karts, Inc. ("Brister's"). Third-party defendant American Dynasty Surplus Lines Insurance



Company ("American Dynasty"), an insurer whose policy does provide coverage for the claim, has opposed North American's motion, arguing that North American has waived or is estopped from asserting non-coverage, notwithstanding the fact that North American's policy had been cancelled and was not in effect at the time the claim was received.[1]

The material facts relating to North American's motion are not in dispute. North American and Brister's were parties to a "claims made" commercial general liability insurance policy with an applicable policy period of October 12, 1995 to October 12, 1996.[2] The policy was cancelled effective July 29, 1996, and notice of such cancellation was given to Brister's, which had in fact obtained follow-on "claims made" coverage from American Dynasty.[3] Approximately thirteen months later, on or about August 22, 1997, Brister's insurance agent, third party defendant Palomar Insurance Corporation ("Palomar"), mistakenly gave notice of the claim to North American as opposed to American Dynasty.[4] On or about August 25, 1997, North American's claims adjusters appointed counsel to answer and defend the claim on behalf of Brister's in litigation in 16th Judicial District Court, St. Martin Parish, Louisiana.[5] Subsequently, on or about July 16, 1999, North American notified Brister's that there was no coverage under North American's policy due to the cancellation of the policy effective July 26, 1996.[6]

After receiving notice that North American was not the proper carrier, Brister's immediately contacted American Dynasty requesting that they provide coverage under

---

[1] American Dynasty filed a memorandum in opposition to North American's motion on March 20, 2001 and a first supplemental memorandum in opposition on April 17, 2001.
[2] North American Complaint for Declaratory Judgment ("Complaint"), ¶¶4 and 5.
[3] Complaint, ¶6 and American Dynasty Answer to Third Party Demand ("Answer"), ¶4.
[4] Complaint, ¶7 and Brister's Third Party Demand ("Third Party Demand"), ¶8.
[5] Complaint, ¶8.
[6] Complaint, ¶10.

the applicable follow-on policy.[7]  American Dynasty refused to provide coverage, informing Brister's that American Dynasty would not defend Brister's against the claim.[8] North American subsequently filed the instant declaratory judgment proceeding, seeking an order confirming the absence of coverage under North American's policy.

In its opposition, American Dynasty does not dispute that North American's policy had been cancelled and was no longer in effect at the time notice of the claim was erroneously sent to North American.  Instead, American Dynasty argues that the doctrines of waiver and estoppel should apply in this case to extend North American's coverage to a risk clearly outside the scope of its policy as written, and to a risk the insured actually intended American Dynasty to cover.  American Dynasty bases its waiver and estoppel argument on actions or omissions of North American after receiving notice of the claim.  Specifically, American Dynasty points to the appointment by North American's claims adjusters of counsel to defend the claim, North American's delay in notifying the insured of the lack of coverage, and its failure to send the insured a reservation of rights letter as grounds for application of the doctrines of waiver and estoppel.  American Dynasty contends further that Brister's relied to its detriment on North American's actions.

As a matter of applicable Louisiana law, the doctrines of waiver and estoppel have no application to this case. The undisputed facts are that the claim asserted against Brister's was wholly outside the scope of North American's coverage as written and as intended by Brister's and North American.  It is well-settled that waiver or estoppel cannot be used to extend insurance coverage to a risk not properly within the limits of a

---

[7] Third Party Demand, ¶11.
[8] Third Party Demand, ¶12.

3

policy as written. *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987); *Knighten v. Daniell Battery Manufacturing Company*, 96-0733, 96-0734 (La. App. 1st Cir. 12/20/96), 688 So.2d 1197, 1200-1201, *writ denied*, 97-0997 (La. 6/13/97), 695 So.2d 988. Moreover, as the insured obtained follow-on coverage from American Dynasty that covers the claim, and was at all times represented by competent counsel in defense of the claim, Brister's clearly did not rely to its detriment on North American's actions. As a matter of law, the actions or inactions of North American after receiving notice of the claim cannot extend North American's coverage to the subject claim. To the contrary, for the reasons stated in North American's memorandum in support of its motion for summary judgment and herein, North American has no obligation to defend or indemnify Brister's with respect to the subject claim, and is entitled to judgment to this effect as a matter of law.

II. **THE DOCTRINES OF WAIVER AND ESTOPPEL CANNOT BE USED TO EXTEND COVERAGE TO A RISK NOT WITHIN THE TERMS OF A POLICY AS WRITTEN**

Louisiana courts have repeatedly held that conditions going to the coverage or scope of a policy of insurance may not be waived by implication from conduct or action. *Knighten*, 688 So.2d at 1200-1201; *Tate*, 508 So.2d at 1374. *Case v. Louisiana Medical Mutual Insurance Company*, 624 So.2d 1285 (La. App. 3rd Cir. 1993); *Hogan v. State Farm Automobile Insurance Company*, 94-0004 (La. App. 1 Cir. 12/22/94), 649 So.2d 45. This rule is directly applicable in this case because the North American policy at issue had been cancelled and was no longer in effect at the time notice of the claim was received.

The *Case* decision is directly on point, and confirms the applicability of this rule to facts virtually identical to those at bar. In *Case*, the court held that a medical malpractice insurer's failure to inform a patient that a "claims made" policy did not provide coverage did not estop the insurer from asserting a valid defense to coverage based on untimely notice of the claim. *Case* involved a medical malpractice suit alleging that on September 26, 1986, the insured-doctor had negligently performed an operation on the plaintiff. On September 25, 1987, the plaintiff filed a claim with the state Commissioner of Insurance. The Commissioner of Insurance sent the plaintiff written acknowledgment of receipt of the claim, noting that the policy period provided by Louisiana Medical Mutual Insurance Company ("LAMMICO") extended from July 1, 1986 to July 1, 1987, and further erroneously advising the plaintiff that the doctor had a reporting endorsement from LAMMICO covering him for any incident occurring while he had coverage with LAMMICO. Approximately eight months later, on May 12, 1988, the Commissioner notified the plaintiff that the reporting endorsement had actually never been issued, and that there was no coverage for the claim. The plaintiff subsequently filed suit against LAMMICO, alleging that LAMMICO was estopped from denying coverage under the "claims made" policy, and that the plaintiff had relied to her detriment on the Insurance Commissioner's statements that coverage in fact existed.

The court in *Case* rejected the plaintiff's arguments, noting that it was undisputed that plaintiff had not provided oral or written notice of the claim to LAMMICO during the policy's effective period. The court found no merit in the plaintiffs' estoppel arguments, noting that under Louisiana law, estoppel, which is "rarely applied", is not favored, and that estoppel claims must be examined carefully and strictly. *Case*, 624

So.2d at 1289-1290 (citations omitted). The court further found that none of the elements necessary for the application of estoppel were present in the case. The court noted that LAMMICO never overtly represented to plaintiff that its policy provided coverage for the claim. The court also stated that "LAMMICO's failure to promptly advise appellants that coverage was not available does not constitute an 'omission' on which they were entitled to rely," and that "LAMMICO did not have a duty to respond to appellant's claim or provide a legal representative to Dr. Deacon *absent coverage*." 524 So.2d at 1290 (emphasis in original). Finally, the *Case* court found that the claimed reliance on LAMMICO's silence on the issue of coverage did not work to plaintiffs' detriment because plaintiffs were not harmed by such silence. *Case*, 624 So.2d at 1790.

That the doctrines of waiver and estoppel have no application in this case is further illustrated by the decisions in *Knighten* and *Hogan*. *Knighten* involved an insurer's denial of coverage on the grounds that the intentional conduct alleged against the insured was expressly excluded from the applicable insurance policy. Relying on the *Tate* decision, the court rejected the insured's contention that the insurer had waived the exclusion, stating:

> Instead of supporting appellant's argument, *Tate* completely negates it. Applying the common law doctrine of waiver in insurance cases, Louisiana courts have stated that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. Waiver cannot be used to extend insurance coverage to a risk not properly within the limits of a policy as written.

6

*Knighten*, 688 So.2d at 1200-1201 citing *Tate*, 508 So.2d at 1374. Significantly, the Louisiana Supreme Court denied writs in the *Knighten* case even though this case was decided after the Supreme Court's decision in *Tate*.

Similarly, in *Hogan*, the court held that an insurer was not estopped from asserting its right to certain credits under the applicable policy even though the insurer had paid a claim on behalf of the insured without deducting the credits. In reaching its decision, the court stated:

> . . .the application of the doctrine of estoppel is not permitted in the area of insurance law to extend or enlarge coverage beyond that set forth in the policy. . . .This rule has been applied even in instances where the insurer has misrepresented to the insured that there was coverage under the policy until shortly before trial and even tendered a check to settle the claim.

*Hogan*, 649 So.2d at 53 (citations omitted), citing *Graham Resources v. Lexington Insurance*, 625 So.2d 716, 719-720 (La. App. 1st Cir. 1993), *writ denied*, 93-2809 (La. 1/13/94), 631 So.2d 1164; *Balehi Marine v. Fireman's Ins. Co. of Newark*, 460 So.2d 16, 17 (La. App. 1st Cir. 1984), *writ denied*, 462 So.2d 654 (La. 1985); *Hunter v. Office of Health Services, Etc.*, 385 So.2d 928, 937 (La. App. 2d Cir.), *writ denied*, 393 So.2d 737 (La. 1980).

In this case, it is undisputed that the policy in question had been cancelled, and Brister's had received notice of such cancellation long before the claim was erroneously sent to North American by Palomar. Under established Louisiana law, no conduct by North American, including the appointment of counsel to defend Brister's, the delay in notifying Brister's of non-coverage, and the failure to send a reservation of rights letter,

7

can bring this claim within the scope of North American's "claims made" policy, which was not in effect when the claim was submitted to North American.

### III. THE DOCTRINES OF WAIVER AND ESTOPPEL HAVE NO APPLICATION IN THIS CASE

In its opposition, American Dynasty erroneously suggests that the law in Louisiana is not as stated above. Relying on dictum in the *Tate* decision and cases addressing policy conditions that furnish grounds for forfeiture of the policy, American Dynasty invites this court to apply the doctrines of waiver or estoppel in this case to extend North American's coverage to a risk that neither Brister's nor North American ever intended to be covered, and that Brister's in fact intended American Dynasty to cover. This court should decline this invitation, as it is based on a fundamental misreading of Louisiana law.

American Dynasty's reliance on the dictum in *Tate* is clearly misplaced. As illustrated in the cases discussed above, in decisions after *Tate*, Louisiana courts have consistently ignored the *Tate* dictum cited by American Dynasty, and instead, applied the rule that conditions going to the coverage or scope of a policy of insurance may not be waived by implication from conduct or action. See *Knighten*, 508 So.2d at 1374; *Hogan*, 649 So.2d at 53.

In addition, none of the cases relied upon by American Dynasty involved the circumstances present in this case. *Steptore v. Masco Construction Company, Inc.*, 93-2062 (La. 8/18/94), 643 So.2d 1213, involved the insured's breach of a navigation warranty in a policy. Similarly, *Vargas v. Daniell Battery Manufacturing Company*, 93-2282 (La. App. 1 Cir. 12/29/94), 648 So.2d 1103, and *Cassey v. Stewart*, 31, 437 (La.

8

App. 2 Cir. 1/20/99), 727 So.2d 655, each involved exclusionary language that barred coverage for employees. None of these circumstances are present in this case, which involves a cancelled policy that was no longer in effect at the time the claim was submitted.

In any event, Brister's had no right to rely on North American's delay in notifying it of non-coverage because Brister's itself knew that the policy had been cancelled. In addition, North American took no action that was in any way prejudicial or detrimental to Brister's. To the contrary, North American appointed counsel, who has continuously defended Brister's interests with respect to the claim. Accordingly, Brister's has been benefited rather than harmed by North American's conduct. Moreover, upon discovering its adjuster's error and notifying the insured of non-coverage, North American immediately appointed separate counsel to represent North American on the coverage issue, thereby avoiding any potential conflict of interest. Accordingly, even assuming for the sake of argument, that the doctrines of waiver or estoppel could properly be applied in this case, the facts of this case still mandate a finding that North American has not waived its right to deny coverage because the policy was cancelled, and is not estopped from asserting this defense.

## IV.  CONCLUSION

For the foregoing reasons, North American is entitled to judgment as a matter of law that its "claims made" policy does not provide coverage for the personal injury claim asserted against Brister's, and North American has no duty to defend or indemnify Brister's with respect to such claim.

9

                                                    Respectfully submitted,

OF COUNSEL:

KING, LEBLANC & BLAND, L.L.P.

_____
LINDSAY A. LARSON, T.A. (#08053)
ROBERT J. STEFANI, JR (#19248)
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Telephone: (504) 582-3800

Attorneys for North American Capacity Insurance Company

10

## **CERTIFICATE**

I hereby certify that a copy of the above and foregoing pleading has been forwarded to all counsel of record either by hand delivery or by depositing same in the U.S. Mail, properly addressed and postage prepaid, this __20__ day of April, 2001.



S:\1606\009\ CASES\US DISTRICT COURT - #00-429\PLEADINGS\SUPP'L.MEM.SUPP.MSJ..DOC