FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN 11 PM 4: 37

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NORTH AMERICAN CAPACITY INS. CO. | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0429 |
| BRISTER'S THUNDER KARTS, INC. | * | SECTION "L" |

## ORDER AND REASONS

Before the Court are plaintiff North American Capacity Ins. Co.'s motion for summary judgment, third-party defendant Palomar Ins. Co.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), and defendant/third-party plaintiff Brister's Thunder Karts, Inc.'s motion for summary judgment. For the following reasons, North American Capacity Ins. Co.'s motion for summary judgment is DENIED; Palomar Ins. Co.'s Rule 12(b)(6) motion to dismiss is GRANTED; and Brister's Thunder Karts, Inc.'s motion for summary judgment is DENIED AS MOOT.

## I. BACKGROUND

Defendant Brister's Thunder Karts, Inc. ("Brister's") entered into an insurance contract agreement with plaintiff North American Capacity Ins. Co. ("North American") to purchase a "claims-made" policy (the "North American Policy").[1] The North

---

[1] A claims-made policy is one "where coverage attaches only *if the negligent harm is discovered and reported within the policy* period in contrast with 'an occurrence' policy which merely requires the commission of the negligent act during the policy's effective period regardless of the date of discovery and reporting." *Case v. Louisiana Medical Mutual Insurance Co.*, 624 So.2d 1285, 1289 (La.App. 3 Cir. 1993) (emphasis in original).

DATE OF ENTRY
JUN 1 2 2001

American Policy covered Brister's from October 12, 1995 to October 12, 1996. Before it expired, the policy was cancelled by Brister's effective on July 29, 1996.

Upon cancellation, Brister's entered into a new insurance contract with Great American Ins. Co., doing business as American Dynasty ("Great American"), to purchase a "claims-made" policy (the "Great American Original Policy"). The effective coverage period for the Great American Original Policy was between July 29, 1996 and July 29, 1997. Prior to the expiration of the Great American Original Policy, Great American issued a renewal policy to extend coverage from July 29, 1997 through July 29, 1998 (the "Great American Renewal Policy").

Brister's sought performance of its insurance coverage after being sued in state court by Rolland and Sue LeBlanc (the "LeBlanc Lawsuit") for facial injuries suffered by their daughter while she was riding in a Brister's go-cart. The alleged facial injury occurred on May 17, 1996, and Brister's was served with the complaint and received notice of the LeBlanc Lawsuit on August 19, 1997.

On August 20, 1997, Brister's sent the petition to its insurance broker, Palomar Ins. Co. ("Palomar"). On August 21, 1997, Palomar acknowledged receipt of the claim by facsimile. Palomar also attached a copy of the loss notice that it had sent to North American on August 20, 1997.

Upon receiving the loss notice from Palomar, North American proceeded to appoint counsel to defend Brister's in the LeBlanc Lawsuit on August 25, 1997.[2] In

---

[2] Mary Hamilton of Voorhies & Labbe was chosen to represent Brister's in 1997 and continues to defend it in the LeBlanc Lawsuit.

addition, Brister's paid $25,000 in attorney's fees as required by the deductible of the North American Policy.

North American filed suit in this court seeking a declaratory judgment action to determine the party responsible for Brister's coverage. On motion for summary judgment, North American argues that it is not required to cover Brister's because it is entitled to a coverage defense. Great American, however, contends that North American's motion should be denied because it waived its coverage defense by appointing counsel to defend Brister's, by failing to reserve its rights, and by enforcing the policy's deductible. Palomar moves for dismissal arguing that Brister's cannot seek damages against it in a declaratory judgment action. Alternatively, Palomar argues that Brister's has not plead a proper cause of action because it has not suffered any damages as a result of Palomar's alleged wrongdoing. Finally, Brister's moves for summary judgment because the Great American Renewal Policy was in force and in effect at the time a claim was made thereby providing coverage. Alternatively, Brister's demands that if neither North American nor Great American are found responsible to provide coverage, then Palomar should be held liable because it negligently notified the wrong insurance carrier. The Court now considers North American's motion for summary judgment, Palomar's Rule 12(b)(6) motion to dismiss and Brister's motion for summary judgment.

## II. ANALYSIS

### A. North American's Motion for Summary Judgment

North American moves for summary judgment arguing that it did not waive its right to assert a coverage defense by appointing counsel to defend Brister's claim asserted

after the coverage period had expired. Great American responds that North American did waive its coverage defense by acting on behalf of Brister's. Because the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issues as to any material fact, the legal issue raised by the parties is properly before the Court for summary judgment. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

In support of its position, North American cites *Tate v. Charles Aguillard Ins. & Real Estates, Inc.,* 508 So.2d 1371, 1374 (La. 1987), for the proposition that an insurer does not waive the coverage conditions of the insurance policy by its conduct or actions. Moreover, North American explains that waiver cannot be used to extend insurance coverage to a risk not properly within the limits of the policy as written. *See Tate,* 508 So.2d at 1374.

In *Tate,* the Louisiana Supreme Court concluded that "there is no fundamental difference between conditions which have been classified as going to coverage and those classed as furnishing a ground for forfeiture." *Id.* The Louisiana Supreme Court held "that waiver may apply to *any* provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, *even though the effect may bring within coverage risks originally excluded or not covered." Id.* at 1375 (emphasis added).

The Louisiana Supreme Court in *Steptore v. Masco Construction Co., Inc.,* 643 So.2d 1213 (La. 1994), reaffirmed the *Tate* principle in a suit almost factually identical to the present case. In *Steptore,* the court considered whether a liability insurer, who knew

4

of facts indicating that it had the right to deny coverage, waived its coverage defense by undertaking the insurer's defense without obtaining a nonwaiver agreement to reserve its rights. *See Steptore*, 643 So.2d at 1213. At the time of the event giving rise to the claim, the facts of the case clearly indicated that the insurer had knowledge of the insured's breach which was sufficient for the insurer to deny coverage. *See id.* at 1215-1217.

Like the insurer in *Steptore*, North American knew that it had received notice of Brister's claim more than a year after the coverage had lapsed. In *Steptore*, the insurer did not deny coverage or enter into an agreement reserving the right to deny coverage until six months after it appointed counsel to undertake insured's defense. *See id.* at 1215. North American similarly did not obtain a nonwaiver agreement reserving its right to deny coverage, and unlike the *Steptore* insurer, it waited three years to deny coverage for the first time. Because North American assumed Brister's defense without reserving its rights or otherwise protecting its interests, it waived any coverage defense it may have had under its policy with Brister's. *See id.* at 1217.

There is also no genuine dispute as to the material facts pertinent to the waiver issue. North American assumed and continued the defense of the insured in the face of facts indicating that it had a right to deny coverage. *See id.* at 1216 (stating that an insurer is charged with knowledge of the contents of its own policy). Furthermore, North American did not obtain a nonwaiver agreement to reserve its right to deny coverage. *See Peavey Co. v. M/V ANPA,* 971 F.2d 1168, 1175 (5th Cir. 1992) (stating that an insurer must obtain a nonwaiver agreement to reserve its rights when a conflict of interests arises and the insurer has knowledge of facts indicating noncoverage). As a result, the Court

finds that North American waived any coverage defense it may have had under the policy.[3]

### B. Palomar's Rule 12(b)(6) Motion to Dismiss

Palomar moves to dismiss Brister's claim against it because Brister's has failed to allege any liability against it even if neither North American nor Great American are found responsible for coverage. Additionally, Palomar argues that Brister's has failed to allege that it incurred any damages as a result of Palomar's alleged wrongdoing.

Because the Court finds that North American waived its coverage defense, Brister's claims against Palomar are ripe for dismissal because no set of facts could support Palomar's liability to Brister's. *See Brown v. NationsBank*, 188 F.3d 579, 586 (5th Cir. 1999) (internal citations omitted). Moreover, even if Palomar was negligent by notifying the wrong insurance carrier, Brister's has not alleged any damages from Palomar's allegedly negligent action because Brister's has been afforded representation at every stage of the LeBlanc Lawsuit. Therefore, the Court finds that Brister's has failed to state a proper cause of action against Palomar.

### C. Brister's Motion for Summary Judgment

Brister's moves for summary judgment against Great American and Palomar arguing that Great American should provide insurance coverage because its policy was effective and in force at the time the LeBlancs filed suit against Brister's. Alternatively,

---

[3] Great American also advances the defenses of equitable estoppel and ratification. Because the Court finds that North American waived its coverage defense, the Court finds that it is not necessary to address either defense at this time.

Brister's claims that if North American and Great American are not found responsible to provide coverage, then Palomar should provide coverage because it failed to properly notify the correct insurance carrier.

Great American does not contest Brister's allegations. However, Great American argues that its policy contains an "escape clause" which denies coverage to an insured who is covered by the terms of another insurance policy. In this case, the North American Policy is the "other insurance policy available to the insured" pursuant to Great American's escape clause because North American insured Brister's and waived its coverage defense. The North American Policy also contains a "pro rata clause" that allocates liability equally or according to the terms of the policies. However, North American shoulders all liability in this case because the escape clause of the Great American policy and the pro rata clause of the North American policy are both given effect. *See Citgo Petroleum Corp, v. Yeargin, Inc.,* 690 So.2d 154, 167 (La.App. 3 Cir. 1997) (stating that conflicting "escape" and "pro rata" clauses are not mutually repugnant and thus are given effect). Therefore, Great American escapes coverage by operation of its escape clause because Brister's is covered by the North American policy.

Because the Court finds that North American waived its coverage defense and that Brister's failed to state a cause of action against Palomar, Brister's motion for summary judgment is DENIED AS MOOT.

## III. CONCLUSION

For the foregoing reasons, North American's motion for summary judgment is DENIED, Palomar's motion to dismiss is GRANTED and Brister's motion for summary judgment is DENIED AS MOOT.

Done this 8 day of June, 2001
New Orleans, Louisiana

_____
UNITED STATES DISTRICT JUDGE