U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   MAY - 3 2002

LORETTA G. WHYTE
CLERK

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**
APR 1 1 2002

CHARLES R. FULBRUGE III
CLERK

No. 01-30894
Summary Calendar

D.C. Docket No. 00-CV-429-L

NORTH AMERICAN CAPACITY INSURANCE COMPANY

    Plaintiff - Appellant

v.

BRISTER'S THUNDER KARTS INC

    Defendant - Third Party Plaintiff - Appellee - Appellant

v.

AMERICAN DYNASTY SURPLUS LINES INSURANCE COMPANY; PALOMAR INSURANCE CORPORATION

    Third Party Defendants - Appellees

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans.

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

ISSUED AS MANDATE: MAY 0 3 2002

OP-S-J-1

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit

By _____
        Deputy
New Orleans, Louisiana

MAY 0 3 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

00-CV-429-L

No. 01-30894
(Summary Calendar)

U.S. COURT OF APPEALS
**FILED**

APR 1 1 2002

CHARLES R. FULBRUGE III
CLERK

NORTH AMERICAN CAPACITY INSURANCE COMPANY,

           Plaintiff-Appellant,

versus

BRISTER'S THUNDER KARTS, INC.

    Defendant-Third Party Plaintiff-Appellee-Appellant,

versus

AMERICAN DYNASTY SURPLUS LINES INSURANCE COMPANY;
PALOMAR INSURANCE CORPORATION,

    Third Party Defendants-Appellees.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

    Plaintiff-Appellant North American Capacity Insurance Company (North American) appeals the district court's ruling that North American waived its right to deny coverage to Brister's Thunder Karts, Inc. (Brister's), thereby making North American solely responsible for providing defense and coverage to Brister's in the underlying suit. The facts of this case, as set forth in the district court's Findings of Fact and Conclusions of Law, which we

append hereto, are undisputed, leaving us with only a question of state law, to wit, whether Louisiana's waiver doctrine precludes North American's denial of coverage to Brister's.

We have thoroughly reviewed the facts and applicable law as reflected in the appellate briefs of the parties, the record on appeal, and the district court's comprehensive opinion. Our review satisfies us that the district court correctly decided this case. Rather than waste judicial resources by writing a separate opinion, which would be essentially duplicative of the work of the district court, we express our full agreement with that court's reason and disposition of the case. We therefore adopt the district court's opinion in full, incorporate it herewith, append it hereto, and affirm the judgment. Any remaining claims by Brister's against either American Dynasty Surplus Lines Insurance Company or Palomar Insurance Corporation are dismissed as moot.[1]

AFFIRMED.

---

[1] Palomar, the insurance brokerage firm that forwarded the claim against Brister's to North American, submitted a brief urging affirmance of the district court's judgment dismissing Palomar from the suit. Brister's did not appeal this issue in its opening brief and thus we need not consider it. In any case, affirmance vel non of the Fed. R. Civ. P. 12(b)(6) dismissal of Palomar vis-à-vis Brister's is mooted by our conclusion that North American waived its right to deny coverage to Brister's.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORTH AMERICAN CAPACITY INS. CO.        * CIVIL ACTION

VERSUS                                  * NO. 00-429

BRISTER'S THUNDER KARTS, INC.           * SECTION "L"

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.

PROCEDURAL HISTORY

On February 10, 2000, North American Capacity Ins. Co. ("North American") filed suit seeking a declaratory judgment that they are not liable to provide insurance coverage to Brister's Thunder Karts, Inc. ("Brister's"). On September 5, 2000, Brister's filed a third-party complaint against Great American Ins. Co., doing business as American Dynasty ("Great American"), and Palomar Ins. Co. ("Palomar"). Brister's seeks to hold Great American liable to provide insurance coverage. Palomar was dismissed pursuant to Rule 12(b)(6) on June 8, 2001. This case came on for trial without a jury on July 9, 2001.

The Court, having carefully considered the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact

1

constitute a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusions of law constitute a finding of fact, the Court hereby adopts it as such.

II.

FINDINGS OF FACT

(1)

North American Capacity Insurance Company is a New Hampshire corporation with its principal place of business in New Hampshire.

(2)

Brister's Thunder Karts, Inc. is a Louisiana corporation with its principal place in Louisiana.

(3)

Great American Insurance Company, doing business as American Dynasty Surplus Lines, Inc., is a foreign corporation with its principal place of business outside Louisiana.

(4)

Palomar Insurance Company is an Alabama corporation doing business in Louisiana.

(5)

Defendant Brister's entered into an insurance contract agreement with plaintiff North American to purchase a "claims-made"

policy (the "North American Policy").[2]  The North American Policy covered Brister's from October 12, 1995 to October 12, 1996. Before it expired, the policy was cancelled by Brister's effective on July 29, 1996.

(6)

Upon cancellation, Brister's entered into a new insurance contract with Great American, to purchase a "claims-made" policy (the "Great American Original Policy"). The effective coverage period for the Great American Original Policy was between July 29, 1996 and July 29, 1997.  Prior to the expiration of the Great American Original Policy, Great American issued a renewal policy to extend coverage from July 29, 1997 through July 29, 1998 (the "Great American Renewal Policy").

(7)

Brister's sought performance of its insurance coverage after being sued in state court by Rolland and Sue LeBlanc (the "LeBlanc Lawsuit") for facial injuries suffered by their daughter while she was riding in a Brister's go-cart.  The alleged facial injury occurred on May 17, 1996, and Brister's was served with and

---

[2] A claims-made policy is one "where coverage attaches only *if the negligent harm is discovered and reported within the policy* period in contrast with 'an occurrence' policy which merely requires the commission of the negligent act during the policy's effective period regardless of the date of discovery and reporting." *Case v. Louisiana Medical Mutual Insurance Co.*, 624 So.2d 1285, 1289 (La.App. 3 Cir. 1993) (emphasis in original).

3

received notice of the LeBlanc Lawsuit complaint on August 19, 1997.

(8)

On August 20, 1997, Brister's sent the petition to its insurance broker, Palomar. On August 21, 1997, Palomar acknowledged receipt of the claim by facsimile. Palomar also attached a copy of the loss notice that it had sent to North American on August 20, 1997.

(9)

Upon receiving the loss notice from Palomar, North American proceeded to appoint counsel to defend Brister's in the LeBlanc Lawsuit on August 25, 1997.[3] In addition, Brister's paid $25,000 in attorney's fees as required by the deductible of the North American Policy.

(10)

North American seeks a declaratory judgment declaring that they are not liable to provide Brister's with insurance coverage.

III.

CONCLUSIONS OF LAW

(1)

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

---

[3] Mary Hamilton, Esquire of the Law Firm of Voorhies & Labbe, was chosen to represent Brister's whom she has vigorously defended in the LeBlanc Lawsuit until the present time.

(2)

Venue is appropriate for this district pursuant to 28 U.S.C. § 1391.

(3)

North American asserts that it did not waive its right to a coverage defense by appointing counsel to defend Brister's claim asserted after the coverage period had expired. In support of its position, North American cites *Tate v. Charles Aguillard Ins. & Real Estates, Inc.*, 508 So.2d 1371, 1374 (La. 1987), for the proposition that an insurer does not waive the coverage conditions of the insurance policy by its conduct or actions. Moreover, North American explains that waiver cannot be used to extend insurance coverage to a risk not properly within the limits of the policy as written. *See Tate*, 508 So.2d at 1374.

(4)

North American's reliance on *Tate* is ill founded. In *Tate*, the Louisiana Supreme Court concluded that "there is no fundamental difference between conditions which have been classified as going to coverage and those classed as furnishing a ground for forfeiture." *Id.* The Louisiana Supreme Court held "that waiver may apply to *any* provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, *even though the effect may*

5

*bring within coverage risks originally excluded or not covered."* Id. at 1375 (emphasis added).

(5)

The Louisiana Supreme Court in *Steptore v. Masco Construction Co., Inc.*, 643 So.2d 1213 (La. 1994), reaffirmed the *Tate* principle in a suit almost factually identical to the present case. In *Steptore*, the court considered whether a liability insurer who knew of facts indicating that it had the right to deny coverage waived its coverage defense by undertaking the insured's defense without obtaining a nonwaiver agreement to reserve its rights. *See Steptore*, 643 So.2d at 1213. At the time of the event giving rise to the claim, the facts of the case clearly indicated that insurer had knowledge that insured was in breach which was sufficient for insurer to deny coverage. *See id.* at 1215-1217.

(6)

Like the insurer in *Steptore*, North American knew that it had received notice of Brister's claim more than a year after the coverage had lapsed. In *Steptore*, the insurer did not deny coverage or enter into an agreement reserving the right to deny coverage until six months after it appointed counsel to undertake insured's defense. *See id.* at 1215. North American did not obtain a nonwaiver agreement reserving its right to deny coverage, and

unlike the *Steptore* insurer, it waited three years to deny coverage for the first time. Because North American assumed Brister's defense without reserving its rights or otherwise protecting its interests, it waived any coverage defense it may have had under its policy with Brister's. *See id.* at 1217.

(7)

North American assumed and continued the defense of the insured in the face of facts indicating that it had a right to deny coverage. *See id.* at 1216 (stating that an insurer is charged with knowledge of the contents of its own policy). Furthermore, North American did not obtain a nonwaiver agreement to reserve its right to deny coverage. *See Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1175 (5th Cir. 1992) (stating that an insurer must obtain a nonwaiver agreement to reserve its rights when a conflict of interests arises and the insurer has knowledge of facts indicating noncoverage). As a result, the Court finds that North American waived any coverage defense it may have had under the policy.

(8)

North American shoulders all liability in this case because the escape clause of the Great American Policy and the pro rata clause of the North American Policy are both given effect and control. *See Citgo Petroleum Corp, v. Yeargin, Inc.*, 690 So.2d

154, 167 (La.App. 3 Cir. 1997) (stating that conflicting "escape" and "pro rata" clauses are not mutually repugnant and thus are given effect). Great American concedes that at the time the claim was made to Brister's its policy was in force and effect. However, the Great American Policy contains an "escape clause" which denies coverage to an insured who is covered by the terms of another insurance policy. In this case, the "other insurance policy available to the insured" referenced in Great American's escape clause is the North American Policy because North American insured Brister's and waived its coverage defense. The North American Policy also contains a "pro rata clause" that allocates the share of the liability equally or according to the terms of the policies. Therefore, Great American escapes coverage by operation of its escape clause and pro rata clause because Brister's is covered by the North American Policy.

## IV.

### CONCLUSION

On the basis of the foregoing findings of fact and conclusions of law, the Court finds that plaintiff North American waived its coverage defense. Consequently, North American is liable to provide insurance coverage to Brister's.

This is the judgment of the Court.

8

New Orleans, Louisiana

                s/    ELDON E. FALLON
           UNITED STATES DISTRICT JUDGE